We have four argued cases today. The first one is In Re Rivera. Council ready to proceed? Yes, Your Honor. Good morning, Your Honors. Mr. Tundu? Yes. Your Honors, in invalidating Claim 23 of Patent 8291-812, the board below relied on an untrue acclaimed term, tamper. This extrinsic definition was not in the evidentiary record. And by relying on this definition, the Patent Office exceeded its authority provided by Congress which mandated that unpatentability be proven by the petitioner with a preponderance of evidence. When you said it was not in the evidentiary record, I guess maybe I'm misremembering. I thought it was introduced with the reply filing by the challenger. Yes, Your Honor. Does that not make it part of the evidentiary record? No, Your Honor. Because in our position is what an attorney says a claim term means is not evidence. So for it to have been in the record, we would have had a dictionary definition that would have been labeled as an exhibit. As an example, the definition that we offered below... I'm sorry. Again, I may be just confusing the details. I thought that was a Merriam-Webster dictionary definition. So the definition was it was written in the reply brief and then at the end of the sentence they had a cite to Merriam-Webster's 2011. So when you say not in the evidentiary record, you mean that there wasn't a single page photocopy of what was accurately inserted into the record of what was accurately quoted from that page of Merriam-Webster? Whether it was accurate, we don't know because that page is not in the record. All we have to rely on is the attorney who stated the definition. And so I think one of the issues here is the board's position is, well, we think this definition is reasonable and we're not. That's a separate issue from the Chevron doctrine. The Chevron doctrine is did the board even have authority to consider and rely on this definition? And the answer is no because Congress gave its unambiguous intent that unpatentability must be proven by the petitioner with the preponderance of evidence. And so because the definition that they relied on was not in evidence, it's not evidence, they exceeded their authority by relying on it and then using it to invalidate Claim 23. Didn't the board expressly state that it wasn't relying on the definition? In the brief on this appeal, they said that they're not relying on it. In our reply to that, we pointed out where in the final written decision, which is in the joint appendix, page 7, and I can quote it here, our position is the board very clearly relied on it. And from that appendix, page 7, the board said in the final written decision, a dictionary definition provided by petitioner for the word compress, i.e. to press or squeeze together, is reasonable and consistent with use of the term tamper in the specification. We interpret tamper to refer to an element that compresses, i.e. presses or squeezes together, coffee inside the claimed coffee holder. So they introduced the definition provided in that reply and then used that to base their ultimate definition of tamper. Not from what you read. They said they articulated what a party had done, but then they articulated their own definition. Right. And so, Your Honor, our position is that the pressing or squeezing, connecting that phrase to tamping, the only place that that exists in the record is from that reply brief. In our reply brief, we also pointed out in the Patent Office's response, they also make a causal connection between the introduction of this definition or reply to the ultimate conclusion of what tamper means. And I'll pull that out from our reply brief where that is in the Patent Owner's brief. Secondly, so our principal point on the Chevron Doctrine is what I've just articulated. But there are other Patent Office rules that weren't followed when the Patent Office relied on this definition. So one of those rules is that claim constructions have to be in the petition. So that's part of the content of a petition, is that the petitioner puts in their claim construction. They also put in their evidence supporting their challenges of unpatentability. And so that's 37 CFR 42.104B5 and 37 CFR 42.104B6. And we submit, Your Honor, that these rules were not followed because the definition associating tamping with a press or squeeze was in the reply. It was not in the petition. And that also brings up a case that the parties have talked about in their briefs, the Ariosa case, where a reference at issue there was in the petition. And it was an exhibit. And this court found that the Patent Office erred in not considering it. We agree. That case is very similar to our position in that we have a definition that wasn't an exhibit. It wasn't in the petition. And so it should not have been considered because of the rules of claim constructions being in the petition, having your evidence in the petition. Okay. Can I just ask, isn't it right that at least as to, maybe even only, I don't know, as to non-technical terms, and I would consider tamping as sort of a non-technical term, that it's not unusual, for example, for this court in construing a claim by ordinary language where there's no meaningful factual dispute to rely on dictionaries for ordinary language terms to, because other people have thought about the right formulation of words to capture what we kind of intuitively know, and you may as well use that form of words rather than have to think of it yourself. Why is this different from that? Assuming I'm remembering right in general about maybe not a frequent practice, but not unusual practice. So Your Honor, I think the difference comes with agency law. And it goes back to this issue that I think the board's position is, well, we got it right. We construed the term correctly. We take issue with that. We don't think they got it right. But they got it right, and we're allowed to construe terms, so there's no problem. The issue comes with the Chevron doctrine. It's not an issue of whether they think they got it right. It's an issue of did they have the authority to even consider it. So I understand in other instances before the Patent Office where the federal rules or evidence aren't part of a proceeding, there's some leeway there to say, okay, well, this is non-technical. I can look at a dictionary definition, and I can understand this, so I'll go there. In IPRs... But in cases coming from district courts, ordinary old-fashioned infringement litigation, the rules of evidence apply, and so does the general rule that an appellate court is not able to enforce. Nevertheless, on legal questions, and to a very large extent, claim construction is a legal question, at least again where non-technical terms are used, don't we look outside the record in the sense that we can look at publicly available ordinary English definitions? I think, again, Your Honor, it's an issue of district court versus an administrative agency. It also has to do with whether Congress has unambiguously spoken on the issue. So Congress gives the Patent Office the authority to conduct these IPRs, and then they also have additional statutes governing what they do. So when Congress speaks unambiguously, and here they have requiring unpatentability to be proven by evidence, then the Patent Office doesn't have that leeway. They don't have room to interpret a statute that is unambiguous. And written by Congress. So I think it's really an issue of admin law. It's a matter of, could I do this? Did Congress give me the right to do this? And the answer is no. So that's our position on that. I would also add that some of what we were talking about, our principal position is the Chevron doctrine and the role of an admin agency with respect to what Congress has, the authority Congress has given the Patent Office. But secondly and substantively, I think in the Patent Office's reply brief, actually I'm in my rebuttal time, so we can stop now if anyone has any other questions. Okay. I'll just reserve my time for rebuttal. Ms. Lateef? Yes, Your Honor. May it please the Court, in construing the claim term tamper, the Board did not commit any procedural errors as alleged by the patent owner Rivera. And to Judge Wallach's question earlier, the Board did explicitly state that it did not rely on the dictionary definition for the word compress when it construed the term tamper. And that can be found on page A30 of the appendix. And if I could just direct you there, the Board specifically says in the last paragraph, we did not rely on petitioner's definition of compress when declining to limit tamper as patent owner and expert suggested. Rather, we gave the term tamper its broadest reasonable interpretation in view of the claim language. So that's the first issue. To the extent that the Court disagrees and finds that the Board did rely on this dictionary definition, the Patent Office is well within its rights to do so. Going off of what Judge Taranto said... Can I just ask you, I guess I'm a little puzzled. Sure. The Board got this phrase, didn't they? What is it? Press or squeeze or something? Press or squeeze together from the dictionary. I mean, right? So in what sense did it not rely on it? Well, it's the ordinary meaning of a very common and ordinary word, right? Compress. What does dictionary definition? It just went with the common meaning of compress. And if the Board had looked at a dictionary definition, judges have a right to look at dictionary definitions to define technical terms or to construe claim language so long as that construction or that definition doesn't contradict what's in the patent application. So it's more like it had an intuition about what the term meant by an intuition, didn't quite have the words for it. When it saw those words in the dictionary definition, it wasn't adopting those words because a dictionary informed it of something it didn't already know and intuit, but rather found words to capture an intuition it already had. Is that the sense in which it didn't rely? I don't mean to sound negative about that formulation, but it's a little subtle. Well, I think it's right, though. If you look at what the Board said, it says... Right, well, because they had an intuition. They say it's an ordinary word. We know what compress means. And in fact, in the definition, they say a tamper is a device that compresses, i.e., press and squeeze, sort of that is. They're just saying people know what that mean. I'm sorry, not... Yeah, I think they said, i.e., press and squeeze. People know what compress means. It's not a complicated word. And the Board's saying, okay, well, we see this dictionary, great. We don't need to look at it to know what that means. And so, again, the Board didn't rely on it, but even if they had, they would not have committed any procedural errors because the dictionary definition wasn't being offered to handle a fact and dispute. It was just being offered to show this is an ordinary word and this is a plain and ordinary meaning. And so, as we said in our brief, it's akin to just citing case law. Okay, here we have a dictionary definition. Everybody knows what it means. Let me just give you this definition. It didn't need to be provided in an exhibit. And this argument that it had to be in the petition also isn't accurate because the court's decision in Belden talks about rebuttal evidence is allowed to be considered by the Board if it's responding to something in the patent owner response, for example. And so here, it was put in the reply in response to something that the patent owner said about what a tamper does. And just lastly, regardless of whether the Board adopted press and squeeze as a definition for compress or Rivera's definition of compress, which I think in their brief they explained was compact, thou, the prior art that we're talking about, still teaches a tamper that compresses So based on the Board's construction, we believe it was proper. The dictionary definition wasn't relied on. Even if it was relied on, we believe that was also proper. And regardless of which construction you take for the word compress, thou anticipates and discloses a tamper. And I respectfully ask that the court uphold the Board's final written decision. So in terms of the issue of whether the Board relied on the definition, I talked about what in the Board's brief on this appeal at page 13. It states, the Board found that Guangdong's dictionary definition for the word compress was reasonable and consistent with the use of the term tamper in the specification. Thus, the Board interpreted the term tamper to refer to an element that compresses, i.e. presses or squeezes together coffee inside the claimed coffee holder. So that's what I was alluding to earlier about this causal connection, that the petitioner introduces a definition, the Board says that's reasonable, I'm going to go with it. And in my understanding, remembering the Zhao prior art, the tamper there is a net that keeps grounds before it's percolated. Anyway, the dry stuff from floating up in the water. That's correct. And so in terms of the substance, Your Honor, the issue is, okay, so Zhao has a separation that prevents coffee powder from floating. And one thing that seems pretty consistent below and on appeal is that drippolators don't use tamped coffee. And so why is that significant? It's significant because Claim 23 talks about a coffee holder that tamps coffee and it's engageable with a coffee maker. The evidence below was very consistent that a drippolator doesn't use tamped coffee. Tamped coffee is used with pressurized water systems like espresso brewing, but drippolators use loose ground coffee. So Zhao doesn't identify any component as a tamper. And it also says that it can be used with a drippolator, which doesn't use tamped coffee. And there's no other coffee maker identified, whether in Zhao or any piece of prior art below. So separately, our position is that there were procedural errors, that the patent office exceeded its authority, but as background, they didn't get it right either in terms of concluding that Zhao preventing coffee from floating, being used in a drippolator, anticipates a patent that has to do with tamping coffee and engaging that with a coffee maker. Zhao didn't limit it to the drippolators, though, did he? He said it could be used independently as well. That's correct, Your Honor. Claim 23 requires a coffee maker to engage with a coffee maker. So the coffee maker is claimed in Claim 23. And I think that's also one of the issues that was going on below, which was an analysis of Zhao independent of a drippolator, whereas Claim 23 encompasses the coffee maker as well, not just the holder. And if there are no other questions, Your Honor, thank you.